UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARILYN METHAVICHIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-02841 |
| v. ) | |
| ) | Judge Edmond E. Chang |
| JOHN JAY SHANNON, MD, and LINDA ) | |
| FOLLENWEIDER in their official capacities; ) | |
| COOK COUNTY, ILLINOIS; and LINDA ) | |
| FOLLENWEIDER, in her individual capacity, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND STAY DEFENDANTS' ANSWER PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS**

Defendants JOHN JAY SHANNON, MD, and LINDA FOLLENWEIDER in their official capacities, COOK COUNTY, ILLINOIS (collectively "Cook County Defendants"), and LINDA FOLLENWEIDER, in her individual capacity, by their attorney, Kimberly M. Foxx, Cook County State's Attorney, through her assistant, ASA Emily Stewart, pursuant to Rule 12(b)(6), respectfully move this Honorable Court to partially dismiss Plaintiff's First Amended Complaint with prejudice and to stay Defendants' answer pending resolution of Defendants' Motion to Dismiss. In support of this motion, Defendants state as follows:

### I. BACKGROUND

Plaintiff, an Asian female over the age of 60 of Philippine national origin, was employed by Cook County at Cook County Health and Hospital Systems ("CCHHS") from approximately November 29, 2016 through September 19, 2019. (Dkt. #26, ¶¶ 10, 11, 47) Between April 2018 and September 19, 2019, Plaintiff worked as a housing administrator and an administrative

nursing supervisor at CCHHS' Cermak Health Services providing services to detainees at Cook County Jail until she was terminated. (Dkt. #26, ¶¶ 11, 17, 47)

Plaintiff filed her original complaint on May 11, 2020 (Dkt. # 1). On November 15, 2020, Plaintiff amended her complaint to include an additional claim for relief under the Rehabilitation Act. (Dkt. #26, ¶¶ 132-157) Plaintiff's Amended Complaint ("Complaint") includes the following counts against Cook County Defendants:[1] (1) Title VII of the Civil Rights Act of 1964 ("Title VII") race and national origin discrimination; (2) Age Discrimination in Employment Act ("ADEA") discrimination; (3) Americans with Disabilities Act of 1990 ("ADA") discrimination; (4) Rehabilitation Act of 1973 ("Rehabilitation Act") discrimination; (5) Title VII retaliation; (6) ADEA retaliation; (7) Family and Medical Leave Act (FMLA) retaliation; and (8) 42 U.S.C. § 1983 ("Section 1983") violation. In addition, it includes a count against all Defendants for (9) intentional infliction of emotional distress ("IIED"). It also includes the following counts against Defendant Follenweider, in her individual capacity: (10) tortious interference with prospective economic advantage; and (11) tortious interference with contract.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). When assessing a 12(b)(6) motion, courts must accept well-pleaded allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F. 3d 1364, 1369 (7th Cir. 1997). Plaintiff's factual allegations, however, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir.

---

[1] Plaintiff has mis-numbered multiple counts within the Complaint (Dkt. # 26). In addition, Plaintiff appears to have included two identical count IVs in her Complaint (Dkt. # 26, pp. 19, 29).

2008) (*citing Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Courts should avoid straining to find inferences not plainly apparent from the face of the complaint. *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445 (7th Cir. 1977).

### III.    ARGUMENT

#### A.    COUNTS 1-3 AND 5-6 SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.

A plaintiff cannot bring a Title VII, ADEA or ADA suit in court prior to filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the Illinois Department of Human Rights. 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); 29 U.S.C. § 626(d); *see also Miller v. Am. Airlines, Inc.* 525 F.3d 520, 525 (7th Cir. 2008). Although this is not a jurisdictional requirement, it is a prerequisite that a plaintiff must satisfy before filing a claim. *Miller*, 525 F.3d at 525; *Cheek v. W.&S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Flannery*, 354 F.3d at 637.

In Illinois, an EEOC charge of discrimination under Title VII, ADEA or the ADA must be brought within 300 days of the alleged unlawful employment practice. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004); *Bilow v. Much Shelist Freed Denenberg Ament & Rubinstein, P.C.*, 277 F.3d 882, 892 (7th Cir. 2001). Once the EEOC issues a right to sue letter, a plaintiff must file an action in court within 90 days from the date of her receipt of such letter. *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999). Further, a plaintiff is generally prohibited from seeking redress for discrete acts of discrimination or bringing claims that are not included in her EEOC charge. *See Sitar v. Ind. DOT*, 344 F.3d 720, 726-727 (7th Cir.

2003); *Miller*, 525 F.3d at 525 (citing *Cheek*, 31 F.3d at 500); *see also Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010) (merely filing a charge of discrimination does not grant a plaintiff the right to pursue an unlimited spectrum of discrimination theories).

Here, Plaintiff alleges that she filed a charge of discrimination with the EEOC on October 21, 2019 ("Charge") and that she received a corresponding right to sue letter on February 12, 2020 ("Right to Sue Letter"). (Dkt. #26, ¶ 54) However, Plaintiff failed to attach the Charge or the Right to Sue Letter to her original or amended complaint. (Dkt. #1, 26) Absent Plaintiff's inclusion of the Charge, which Defendants have no record of, and the Right to Sue Letter, Cook County Defendants must prudentially assert that Plaintiff has failed to exhaust her administrative remedies and meet the procedural prerequisites necessary for her to bring claims under Title VII, ADEA or ADA. *See Fort Bend Cty. V. Davis*, 139 S. Ct. 1843, \*\*185-52 (2019). More specifically, Cook County Defendants assert that Plaintiff failed to 1) timely file the Charge in relation to all of the allegations contained with the Amended Complaint; 2) timely bring this suit for relief as it relates to her Title VII, ADEA and ADA claims; (3) include her Title VII, ADEA and/or ADA claims in her charging document; and/or 4) include within the Charge each discrete act of discrimination alleged in the Amended Complaint. Thus, for the above reasons, Defendants request that counts 1-3 and 5-6 be dismissed.

### B. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS IN COUNTS 1-4 SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLEAD A VIABLE CLAIM.

To prevail on a Title VII, ADEA, ADA or Rehabilitation Act hostile work environment claim, plaintiff must prove that (1) she was subject to unwelcome harassment; (2) the harassment was based on her protected status; (3) the harassment was so severe and pervasive as to alter her conditions of employment; and (4) there is basis for employer liability. *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 833-34 (7th Cir. 2015)

(discussing the elements of a Title VII hostile work environment claim); *Bennington v. Caterpillar, Inc.,* 275 F.3d 654, 660 (7th Cir. 2001) (applying Title VII elements to ADEA hostile work environment claims); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir 2005) (applying Title VII elements to ADA and Rehabilitation Act hostile work environment claims).

In the case at hand, Methavichit alleges that Defendant Follenweider made a handful of rude and/or "discriminatory" comments to or about her. (Dkt. # 26, ¶¶ 18, 26-27, 30) Specifically, she claims that in May 2018, Follenweider treated her rudely and told her that she was performing poorly, did not deserve her position and that she was not a good fit. (Dkt. #26, ¶ 18) She also claims that in September and October of 2018, she received harassing telephone calls and text messages from Follenweider. (Dkt. #26, ¶ 20) She also alleges that in January 2019, Follenweider told Plaintiff that she did not deserve her position or her automatic pay increase and made "hostile derogatory and negative insults [to Plaintiff] targeting her age, race and disability." (Dkt. #26, ¶¶ 26-27) Methavichit also claims that once she returned to work in May 2019, her co-workers warned her to be careful because Defendant Follenweider "wanted to get rid of her." (Dkt. #26, ¶ 30) In addition to those discriminatory comments, Plaintiff alleges Follenweider "unsuccessfully tried to write her up for taking sick leave" and denied her time off for medical testing in December 2018. (Dkt. #26, ¶¶ 24-25)

Under *Twombly*, a plaintiff's description of her grounds for relief must include more than labels and conclusions or formulaic recitations of the elements of a claim. *See Twombly*, 550 U.S. at 555. Here, Plaintiff's claim that Follenweider made "hostile derogatory and negative insults [to Plaintiff] targeting her age, race and disability" (Dkt. #26, ¶¶ 26-27), made harassing phone calls to Plaintiff and sent harassing texts to Plaintiff are mere conclusory allegations; absent additional information, there is no way to discern whether Follenweider's alleged comments were objectively

5

hostile or harassing, or made reference to Plaintiff's age, race or alleged disability. Such comments, therefore, should not be "entitled to [the] presumption of truth" and should respectfully not be considered when determining whether Plaintiff has met her pleading burden. *See McCauley*, 671 F.3d at 616.

To satisfy the second element of a hostile work environment under Title VII, ADA, ADEA or the Rehabilitation Act, Plaintiff must allege facts that indicate that Follenweider's actions were based on Plaintiff's race, national origin, age or disability. However, after excluding the above referenced conclusory statements, Follenweider's alleged comments and actions (Dkt. # 26, ¶¶ 18, 24-27, 30) in no way suggest that they are based on Plaintiff's alleged protected statuses. Consequently, Plaintiff has failed to satisfy the second element of her hostile work environment claim.

Plaintiff has also failed to plead facts sufficient to satisfy the third prong of a prima facie hostile work environment claim; she does not allege conduct that was severe or pervasive so as to constitute a hostile work environment. When determining whether conduct is sufficiently severe or pervasive to give rise to a hostile work environment, courts consider 1) the "frequency and severity of the conduct; 2) whether it was threatening and/or humiliating or merely an offensive utterance; and 3) whether the harassment unreasonably interfered with [plaintiff's] work." *Atanus v. Perry*, 520 F.3d 662, 676 (7th Cir. 2008) (quoting *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004)). "[R]elatively isolated instances of [non-severe] misconduct, however, will not support" a hostile work environment claim. *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398 (7th Cir. 1999) (explaining that four national origin related comments made over the course of more than a year did not constitute a hostile work environment.).

Thus, once again setting aside her conclusory statements, Plaintiff only alleges that Follenweider made a few comments regarding Plaintiff's work performance and wage increase, unsuccessfully tried to write her up and denied her time off request. (Dkt. # 26, ¶¶ 18, 24-27, 30) As pled, Plaintiff's allegations fail to rise to the level of a hostile work environment, as "[r]elatively isolated instances of non-severe misconduct will not support a claim of hostile environment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 646 (7th Cir. 2005). As Plaintiff has failed to allege facts that are objectively severe or pervasive enough to constitute a hostile work environment, she has also failed to satisfy the third element of a hostile work environment claim. Thus, Plaintiff has failed to meet her pleading burden with respect to two elements of a hostile work environment claim. Consequently, her hostile work environment claims should be dismissed.

### C. COUNTS 3-4 SHOULD BE DISMISSED BECAUSE PLAINTIFF IS NOT "DISABLED" UNDER THE ADA OR THE REHABILITATION ACT.

To establish liability for disability discrimination under the ADA and the Rehabilitation Act, Plaintiff must establish that: (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) Defendant took an adverse employment action against Plaintiff because of her disability. *Garg v. Potter,* 521 F.3d 731, 736 (7th Cir. 2008).

Under the ADA and the Rehabilitation Act, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(a); *Garg*, 521 F.3d at 736. A major life activity includes, among others, "caring for oneself, performing manual tasks, seeing, hearing, eating sleeping, [and] walking[.]" 42 U.S.C. § 12102(2)(A).

Plaintiff alleges that she was on FMLA leave from February 14, 2019 through approximately May 9, 2019 due to a kidney transplant. (Dkt. #26, ¶¶ 28, 30.) She also alleges

7

that she took an additional three days off in July 2019 because she suffered a relapse. (Dkt. #26, ¶ 40) However, at no point does Plaintiff allege that her condition, diabetes, limited her or prevented her from engaging in a major life activity. *See Johnson v. Roehl Props. of Ind. LLC*, 2012 U.S. Dist. LEXIS 47697, at *25 (N.D. Ind. Apr. 4, 2012) (ADA "requires a showing that at least one [ ] impairment[ ] substantially limits one or more [ ] major life activit[y]." (internal quotations omitted)). Furthermore, she was able to return to work, sans accommodation, less than three months from the date of her surgery. (Dkt. #26, 28-30, 43) Thus, the Complaint fails to establish that Plaintiff's diabetes was a disability under the ADA and the Rehabilitation Act. Therefore, Counts 3-4 should be dismissed.

**D. COUNT 4 SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO SHOW THAT SHE SUFFERED AN ADVERSE ACTION "SOLELY" BECAUSE OF HER DISABILITY.**

A plaintiff seeking relief under the Rehabilitation Act for employment discrimination must show that defendant took an adverse employment action "solely" because of Plaintiff's disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013). The court in *Brumfield* explained that since "[t]he Rehabilitation Act protects [ ] employees from discrimination 'solely by reason of' disability, [ ] if an employer fires an employee for any reason other than she is disabled [. . .] there has been no violation[.]" *Id*.

Plaintiff's Rehabilitation Act claim fails because the facts alleged do not indicate that her "disability" was the "sole" reason behind Defendants' adverse actions. Plaintiff specifically alleges in support of her Rehabilitation Act claim that Defendant Follenweider "made hostile, derogatory and negative comments [to Plaintiff] targeting her age, race/national origin, and disability." (Dkt. #26, ¶ 141) Hence, the facts that Plaintiff selected to support her claim under the Rehabilitation Act do not support a finding that Defendants' adverse actions were solely

attributable to Plaintiff's alleged disability status. Thus, Plaintiff fails to meet her pleading burden under the Rehabilitation Act and, consequently, count 4 should be dismissed.

### E. PLAINTIFF'S SECTION 1983 CLAIM AGAINST DEFENDANTS SHANNON AND FOLLENWEIDER, IN THEIR OFFICIAL CAPACITIES, SHOULD BE DISMISSED AS REDUNDANT.

"Actions against individual defendants in their official capacities are treated as suits brought against the governmental entity itself." *Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008). Hence, Plaintiff's Section 1983 claims against Defendants Shannon and Follenweider, in their official capacities, in count 8 should be dismissed as redundant.

### F. PLAINTIFF FAILS TO PLEAD HER *MONELL* CLAIM

To state a Section 1983 claim against a governmental entity, a plaintiff must allege that a deprivation of the plaintiff's constitutional rights resulted from a custom or policy of that entity. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). A plaintiff can show a custom or policy in one of three ways, "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Here, Plaintiff appears to be relying on the second avenue of proving "widespread practice" (Dkt. #26, ¶¶ 262-263) and the third avenue of proving the injury was "caused by a person with final policymaking authority." (Dkt. #26, ¶ 261) To state a claim regarding a "widespread practice," there needs to be a true municipal policy at issue, not a random event. *Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005). Hence, Plaintiff must plead sufficient factual content that allows the Court to *plausibly* infer that Defendants Shannon and Follenweider, in their official

9

capacities, or Cook County had a widespread, unofficial policy, practice or custom that deprived Plaintiff of her constitutional rights and that policy or custom was "the moving force" behind the constitutional violation. *Porter v. Bd. of Educ. of Chi.*, 2018 U.S. Dist. LEXIS 69359 at *23-24 (N.D. Ill. April 25, 2018). A single past act is not sufficient to state a plausible claim of a widespread practice. *See Alcorn v. City of Chicago*, 2018 U.S. Dist. LEXIS 126034, *53 (N.D. Ill. July 27, 2018). Indeed, a plaintiff "must allege multiple such incidents so that the Court can draw the reasonable inference that the alleged practice was so 'permanent and well settled' as to constitute custom with the force of law." *Id*; *see also Gable*, 296 F.3d at 538.

Plaintiff's Amended Complaint falls well short of this requirement, as she only makes bare assertions that such policies existed. (Dkt. # 26, ¶¶ 261-62) As previously discussed, under *Twombly*, a plaintiff's description of her grounds for relief must include more than labels and conclusions or formulaic recitations of the elements of a claim. *See Twombly*, 550 U.S. at 555. Here, Plaintiff's claim that, an unknown number of employees have also been subjected to "unconstitutional customs and policies," an unknown number of times and in unknown ways (Dkt. #26, ¶ 262), is so vague and unspecific that it should not be "entitled to [the] presumption of truth" and should, respectfully, not be considered when determining whether Plaintiff has met her *Monell* claim pleading burden. *See McCauley*, 671 F.3d at 616.

If such vague assertions are excluded, the only facts alleged to purportedly support Plaintiff's position is that Plaintiff herself was subjected to disparate treatment when Defendants' allegedly failed to "investigate Plaintiff's complaints of [unlawful] discrimination harassment and retaliation" and disciplined, dismissed and barred "Plaintiff from future employment, knowing of the unlawful, discriminatory and retaliatory motives of its administrators." (Dkt. 26, ¶ 261). However, Plaintiff did not submit a memorandum detailing her allegations of discriminatory and

10

retaliatory mistreatment to Defendants until June 26, 2019 – the day before her one-day suspension and two days before she was charged with violating CCHHA Personnel Rules, which ultimately led to her termination and employment ban. (Dkt. #26, ¶¶ 38-39). Plaintiff's reliance on her June 26, 2019 notice is insufficient to show that there was a widespread practice of failing to investigate unlawful discrimination complaints and failing to protect employees from unlawful adverse actions. Thus, she has failed to meet her pleading burden and her *Monell* widespread practice claim should be dismissed.

Plaintiff may also be alleging that she suffered a constitutional injury that was caused by a person with final policymaking authority. To state a *Monell* claim under this third method of proof, Plaintiff must allege facts that indicate individuals with final policymaking authority knew or should have known that constitutional violations would occur. *Field v. City of Chicago*, 2020 U.S. App. LEXIS 36615, at *61 (7th Cir. Nov. 20, 2020). And such notice may be established through "proof of a prior pattern of similar constitutional violations, or through a demonstration that the need for governmental action is so obvious [ ] that the failure to act constitutes deliberate indifference[.]" *Id*. at *62. A failure to act constitutes deliberate indifference when a "'reasonable policymaker [would] conclude that the plainly obvious consequences' of the County's actions would result in the deprivation of a federally protected right." *Gable*, 296 F.3d at 537 (quoting *Bd. of County Comm'rs v. Brown*, 520 US 397, 406-07 (1997)).

Here, Plaintiff fails to identify any individuals with policymaking authority. Moreover, assuming, arguendo, that Shannon as CEO had final policymaking authority, Plaintiff fails to establish that he knew or should have known that constitutional violations would occur or were occurring. Again, excluding her unspecific and conclusory allegations, Plaintiff only alleges that Shannon was aware of Plaintiff's concerns regarding her alleged disparate treatment (Dkt. #26, ¶

37), which taken alone fails to prove a pattern of practice. Furthermore, a reasonable policymaker would not conclude that Plaintiff's allegations alone (regarding her alleged disparate treatment) would necessarily result in the deprivation of a constitutional right. *Cooper v. City of Chi. Heights*, 2011 U.S. Dist. LEXIS 124191, at *29-30 (N.D. Ill. Oct. 27, 2011) ("The plaintiff must introduce evidence that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amount to a policy decision." (*citing Phelan v. Cook Cty.*, 463 F.3d 773, 789 (7th Cir. 2006)); *see also Corbier v. Watson*, 2019 U.S. Dist. LEXIS 14073, at *22 (S.D. Ill. Jan. 29, 2019) (explaining that "a showing of simple or even heightened negligence will not suffice" to prove a policymaker was deliberately indifferent. (*quoting Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 406-07, 411 (1997)). Thus, Plaintiff has failed to meet her pleading burden under the third avenue. For the above reasons, count 8 should be dismissed.

### G. COUNTS 9-11 SHOULD BE DISMISSED IN ACCORDANCE WITH THE TORT IMMUNITY ACT.

The Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") confers immunity upon governments and their employees for liability arising out of the operation of government. *West v. Kirkham*, 147 Ill. 2d 1, 5 (1992); 745 ILCS 10/1-101 *et seq*.

The Tort Immunity Act shields public employees from tort liability where the "injury claimed is a direct result of a discretionary policy determination." *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 501*, 238 F. Supp. 3d 1054, 1064 (N.D. Ill. Mar. 3, 2017) (internal quotations omitted). The court in *Breuder* further explained that "when an official makes such a discretionary policy determination, immunity protects against both negligent and willful and wanton conduct." *Id*. (internal quotations and citations omitted); 745 ILCS 10/2-201. It further explained that

12

decisions that involve the firing of employees is inherently discretionary under § 2-201 of the Tort Immunity Act. *Breuder*, 238 F. Supp. 3d at 1065.

Here, Defendants Follenweider and Shannon occupy positions that require the exercise of discretionary authority. Further, Plaintiff's allegations – related to Defendant Follenweider's evaluation of Plaintiff's work performance, decision to deny Plaintiff time off and decision to discipline Plaintiff (Dkt. #26, ¶¶ 18, 24-27, 32, 33, 39-40, 46-47) – all involve making a discretionary policy determination. In addition, Plaintiff's allegation with regard to Defendant Shannon seems to be that he failed to interfere with her discipline process (Dkt. #26, ¶ 37). As his alleged inaction also constitutes a discretionary policy determination, Plaintiff's tort claims against Defendant Follenweider, in her official and individual capacity, and Defendant Shannon, in his official capacity, should be dismissed pursuant to § 10/2-201 of the Tort Immunity Act. *See Mann*, 1999 U.S. App. LEXIS 16219, at *8-9 (finding that the Tort Immunity Act shields defendants, who evaluated plaintiff's work performance, from liability for defamation, tortious interference with contract and tortious interference with prospective economic advantage.)

Defendant Cook County is also immune from claims based on the conduct of its employees pursuant to 745 ILCS 10/2-106 and 745 ILCS 10/2-107 of the Tort Immunity Act, which provides as follows: "A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous[.]" Moreover, Section 2-106 states, "A local public entity is not liable for an injury caused by an oral promise or misrepresentation of its employee, whether or not such promise or misrepresentation is negligent or intentional."

Here, in count 9, Plaintiff alleges that Cook County consciously disregarded the likelihood of Defendant Follenweider's alleged actions causing Plaintiff emotional distress. (Dkt. #26, ¶ 293) The plain language of §§ 2-106 and 2-107 of the Tort Immunity Act unambiguously immunizes

Cook County from any liability for its employees' misrepresentations or libelous or slanderous conduct. *Goldberg v. Brooks*, 209 Ill. App. 3d 106, 113 (1st Dist. 2011). Therefore, count 9 against Cook County should also be dismissed.

And finally, under the Tort Immunity Act, Plaintiff is barred from recovering damages for any alleged tort which occurred prior to May 11, 2019, pursuant to 745 ILCS 10/8-101, which states, "No civil action…may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received..." 745 ILCS 10/8-101. Therefore, should this court choose not to dismiss Plaintiff's tort claims against the Defendants, any alleged torts that occurred prior to May 11, 2019 (Dkt. # 26, ¶¶ 18-30) (the day after Plaintiff returned to work after her kidney transplant), should be time-barred.

### H. COUNT 9 SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO STATE A VIABLE CLAIM FOR IIED.

To state a claim for IIED, a plaintiff must allege facts that establish that (1) the conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the conduct was such that the defendant knew that severe emotional harm or distress would be certain or substantially certain to result. *Tabora v. Gottlieb Mem. Hosp.*, 279 Ill. App. 3d 108, 119 (1st Dist. 1996). Liability for IIED "has been found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency." *Id*.

However, a reasonable person would not find performing one's job duties, to be extreme and outrageous as to go beyond all possible bounds of decency. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976). Excluding conclusory allegations and those alleged actions that constitute Follenweider's job duties (e.g, evaluating employee performance, disciplining employees and approving or denying time off), Plaintiff few facts to support her claim. Assuming, arguendo, that Defendant Follenweider's alleged comments to Plaintiff that she did not deserve a raise, wasn't a

good fit or didn't deserve her position fell outside of Follenweider's job duties (Dkt. #26, ¶¶18, 26-27), such conduct would still not objectively rise to the level of extreme and outrageous behavior. *Public Finance Corp.*, 66 Ill. 2d at 90. Therefore, count 9, against all Defendants should also be dismissed.

### III. PLAINTIFF'S ANSWER TO COUNT 7 OF THE COMPLAINT SHOULD BE STAYED

A partial motion to dismiss may suspend the time to answer those claims not addressed in the partial motion. *Intercom Ventures, LLC v. FasTV, Inc.,* 2013 U.S. Dist. LEXIS 75032, at *18 (N.D. Ill. May 28, 2013) (explaining that "the weight of the limited authority on this point is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion." (*quoting* 5B WRIGHT & MILLER, FED. PRAC. & PROC. CIV § 1346 (3d ed.).). Accordingly, the deadline for Defendants to answer any remaining portions of Plaintiff's Complaint should be stayed until after this Court has ruled on Defendants' motion to dismiss.

### IV. CONCLUSION

WHEREFORE, Defendants move this Honorable Court to dismiss counts 1-6 and 8-11 of Plaintiff's Amended Complaint with prejudice and stay Defendants' answer to the Complaint pending a ruling on its motion.

Date: December 14, 2020        Respectfully submitted,

                                                  KIMBERLY M. FOXX
                                                  State's Attorney of Cook County

                         By:   /s/ Emily Stewart
                                 Emily Stewart
                                 Assistant State's Attorney – Civil Actions Bureau
                                 500 Richard J. Daley Center
                                 Chicago, Illinois 60602
                                 (312) 603-3014
                                 Emily.Stewart2@cookcountyil.gov