IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. MARILYN METHAVICHIT | ) | |
| | ) | |
| Plaintiff, | ) | 20-cv-02841 |
| v. | ) | |
| | ) | Honorable Edmond E. Chang |
| JOHN JAY SHANNON, MD, AND LINDA FOLLENWEIDER, in their individual capacities; COOK COUNTY, IL; and LINDA FOLLENWEIDER, in her individual capacity, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
PARTIAL MOTION TO DISMISS**

Defendants JOHN JAY SHANNON, MD, and LINDA FOLLENWEIDER in their official capacities, COOK COUNTY, ILLINOIS (collectively "Cook County Defendants"), and LINDA FOLLENWEIDER, in her individual capacity, by their attorney, Kimberly M. Foxx, Cook County State's Attorney, by Emily Stewart, Assistant State's Attorney, reply in further support of their Motion to Partially Dismiss Plaintiff's First Amended Complaint, as follows:

**INTRODUCTION**

Plaintiff's First Amended Complaint ("Complaint") includes the following counts against Defendants Cook County and Defendants Shannon and Follenweider, in their official capacities: (1) Title VII of the Civil Rights Act of 1964 ("Title VII") race and national origin discrimination; (2) Age Discrimination in Employment Act ("ADEA") discrimination; (3) Americans with Disabilities Act of 1990 ("ADA") discrimination; (4) Rehabilitation Act of 1973 ("Rehabilitation Act") discrimination; (5) Title VII retaliation; (6) ADEA retaliation; (7) Family and Medical Leave Act (FMLA) retaliation; and (8) 42 U.S.C. § 1983 ("Section 1983") violation. In addition,

it includes a count against all Defendants for (9) intentional infliction of emotional distress ("IIED"). It also includes the following counts against Defendant Follenweider, in her individual capacity, for: (10) tortious interference with prospective economic advantage; and (11) tortious interference with contract.

In their motion to dismiss, Defendants requested that counts 1-6 and 8-11 be dismissed. Plaintiff in her response, challenged some, but not all of the arguments in Defendant's motion to dismiss. (*See generally* Response.) More specifically, Plaintiff failed to challenge Defendants' claim that 1) Defendant Cook County is immune from tort liability under the Illinois Tort Immunity Act ("TIA"); and 2) Defendants' claim that she failed to state a viable IIED claim. (*Id*.)

"A plaintiff's failure to respond to arguments in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim." *Daugherty v. University of Chicago*, 2017 U.S. Dist. LEXIS 155948, at *25 (N.D. Ill. Sep. 22, 2017). Thus, the Court should grant Defendants' motion to dismiss Plaintiff's IIED claim (count 9) against all Defendants. Plaintiff's remaining counts should be dismissed for the reasons discussed below.

## ARGUMENT

### I. THE REQUIRED LEVEL OF FACTUAL SPECIFICITY IS GREATER HERE BECAUSE OF THE COMPLEXITY OF PLAINTIFF'S CLAIMS.

Plaintiff in her response provides that the appropriate standard of review in this case is the lowest possible standard of review for a 12(b)(6) motion. She alleges that Defendants need only provide fair notice of Plaintiff's claims, the grounds upon which those claims rest, and a story that holds together. (*See* Response, p. 4.) But "[t]he required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chi.*, 671 F.3d 611, 617-18 (7th

Cir. 2011) (quoting *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010) ( "A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.")).

Further, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007). Indeed, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth." *McCauley,* 671 F.3d at 616. Courts should also avoid straining to find inferences not plainly apparent from the face of the complaint. *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445 (7th Cir. 1977).

This is not a simple case, it is a complex one; it includes hostile work environment claims, *Monell* claims and tort claims. (*See generally* Am. Compl.) Thus, the facts and claims here require more factual detail to survive a 12(b)(6) motion to dismiss than a simple adverse action discrimination claim. *McCauley*, 671 F.3d 611, 617-18; *see also Carmona v. City of Chicago*, 2018 U.S. Dist. LEXIS 49117, at *9 (N.D. Ill. Mar. 26, 2018) (granting defendant's motion to dismiss as plaintiff's *Monell* allegations, "even if factual, speak only to his constitutional deprivation; they do not suggest a failure to discipline [with specificity] beyond his particular case."); *Monroe v. Columbia College of Chicago*, No. 17-cv-5837, 2018 U.S. Dist. LEXIS 145333, at *13 (N.D. Ill. Aug. 27, 2018) (granting defendant's motion to dismiss as plaintiff's allegations of department chair denigrating him to other colleagues and subjecting him to hyper-surveillance and threatening investigations for minor infractions did not constitute harassment so severe or pervasive to alter the conditions of employment.); *Wrenn v. Exelon Generation*, LLC, No. 18 C 2524, 2019 U.S. Dist. LEXIS 236590, at *39 (N.D. Ill. Mar. 5, 2019)

(granting defendants motion to dismiss as "plaintiff has not alleged facts plausibly demonstrating that co-worker's conduct was extreme and outrageous[.]").

## II. PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.

As explained in Defendants' Motion to Dismiss, Plaintiff failed to attach her alleged October 21, 2019 Equal Employment Opportunity Commission ("EEOC") charge to the Complaint. (*See* Am. Compl. ¶ 54.) Plaintiff did, however, attach an EEOC charge to her Response, but it was dated July 5, 2019, not October 21, 2019. (*See* Response, Ex. A.) Hence, Plaintiff's termination and ban from future CCHHS employment occurred well after she filed her July 5, 2019 EEOC charge. (*See* Am. Compl. ¶¶ 47-48.)

For Plaintiff to proceed with a claim under Title VII, ADEA, ADA or the Rehabilitation Act, she "must first file a charge of discrimination with the [EEOC] within 300 days of the offending conduct." *Edwards v. Ill. Dep't of Fin. & Prof'l Regulation*, 210 F. Supp. 3d 931, 942 (N.D. Ill. Sept. 22, 2016). Plaintiffs are generally prohibited from seeking redress for discrete acts of discrimination that are not included in her EEOC charge. *See Sitar v. Ind. DOT*, 344 F.3d 720, 726-727 (7th Cir. 2003). Further, unlike acts contributing to a hostile work environment, a plaintiff cannot rely on the continuing violation doctrine to "save discrete acts that are related but not timely filed." *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 723-724 (7th Cir. 2004) (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002)). Termination and retaliatory adverse employment actions are easily identifiable discrete acts where each act "starts a new clock for filing charges, and the clock starts on the date that the act occurred." *Id*.

Here, Plaintiff's September 11, 2019 termination and October 18, 2019 ban from future employment with the Cook County Health and Hospital Systems ("CCHHS") were easily identifiable acts that took place after Plaintiff filed her charge with the EEOC. (*See* Am. Compl. ¶¶ 47-48; *see also* Response, Ex. A.) Thus, both acts fall outside of the scope of Plaintiff's

charge and cannot be revived. *See Lucas*, 367 F.3d at 723-724. Further, as more than 300 days have elapsed since Plaintiff was terminated and banned from CCHHS employment, such claims are now time barred. *Edwards*, 210 F. Supp. 3d at 942. Consequently, Plaintiff is now prohibited from seeking redress under the ADA, ADEA, Title VII and the Rehabilitation Act for any discrete acts of discrimination that were not included in her EEOC charge.

### III. PLAINTIFF FAILS TO ALLEGE DISCRIMINATORY CONDUCT THAT IS 1) SUFFICIENTLY SEVERE OR PERVASIVE TO ALTER THE CONDITIONS OF HER EMPLOYMENT.

Plaintiff's allegations remain insufficient to plead a hostile work environment claim under Title VII, ADEA, ADA or the Rehab Act. *See Lilly v. United Ground Express, Inc*., 2020 U.S. Dist. LEXIS 113593, at *8 (N.D. Ill. June 30, 2020); *see also Bennington v. Caterpillar, Inc.,* 275 F.3d 654, 660 (7th Cir. 2001) (applying Title VII elements to ADEA hostile work environment claims); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir 2005) (applying Title VII elements to ADA and Rehabilitation Act hostile work environment claims). Further, Plaintiff's reliance on *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826 (7th Cir. 2015) in support of her hostile work environment claim is misplaced. (Response, pp. 5-6.)

In *Huri*, plaintiff, an Arab and a Muslim, who wears a hijab, alleged *specific* instances of discrimination based on her religion and national origin. *Huri,* 804 F.3d at 829, 834 (emphasis added). Huri alleged that her supervisors made comments about other colleagues, including the chief judge, being "good Christians" and "good church-going Christians," called plaintiff "evil" in comparison to the "good Christians." *Id*. at 830. She further alleged that her supervisor asked her to join hands with other colleagues in a pray circle in the name of Jesus Christ, screamed at plaintiff, prohibited plaintiff from entering the office early when other employees had 24-hour access, prohibited plaintiff's daughter from waiting in the lobby when other employees were

5

allowed to have their children wait in the lobby and offices, prohibited plaintiff from having personal belongings in the office when co-workers were allowed to do so, excluded plaintiff from social gatherings, and denied plaintiff time off for an Islamic religious holiday. *Id.* at 829-831.

Unlike Huri, the harassment that Plaintiff alleges here is not sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create a hostile or abusive working environment. (*See* Motion to Dismiss, pp. 5-6.) Further, a significant portion of Plaintiff's allegations are merely conclusory. (*Id.*) For example, Plaintiff alleges that 1) in September, October and December 2018, Plaintiff received harassing telephone calls and text messages from Plaintiff; and 2) "[l]ater in January, 2019, Defendant Follenweider told Dr. Methavichit that she did not deserve to be in her current position, and made hostile, derogatory and negative insults targeting her age, race, and disability." (Am. Compl. ¶¶ 19-20, 23, 27; *but cf.* Response, p. 6 ("Ms. Follenweider pestered her in the hospital with unnecessary calls and texts.") Under *McCauley*, such conclusory statements should not be entitled to the presumption of truth. *See* 671 F.3d at 616.

In addition, Plaintiff's claim that Defendant Follenweider blocked Plaintiff's "first opportunity for priority placement for [a] kidney transplant" is unreasonable based on her allegations. (*See* Response, p.6.) Denying an employee's request to use holiday time is not improper; and it is not the same as denying a request for FMLA or sick leave. (*See* Response, p. 2 ("Later that December, knowing Dr. Methavichit needed testing for kidney transplant, Ms. Follenweider arbitrarily refused her request to use her holiday time for that procedure. This deterred her placement on the priority list for kidney transplant. Dr. Methavichit thus took FMLA leave.") (internal citations omitted).) Hence, it is unreasonable for Plaintiff to suggest

that Defendant Follenweider is responsible for Plaintiff's failure to get priority placement on a transplant list.

After excluding Plaintiff's conclusory allegations and unreasonable inferences, Plaintiff only alleges that Defendant Follenweider harassed her by making a handful of rude comments to or about her and "*unsuccessfully* tr[ying] to write her up for taking sick leave." (Am. Compl. ¶¶ 18, 24, 26-27, 30 (emphasis added).) Thus, Plaintiff fails to allege facts sufficient to show that her alleged harassment was "so severe or pervasive so as to alter the conditions of [her] employment and create a hostile or abusive working environment[.]" *See Lilly*, 2020 U.S. Dist. LEXIS 113593 at *8. Consequently, she has failed to meet her pleading burden with respect to her hostile work environment claim and those claims should be dismissed with prejudice. *See McCauley*, 671 F.3d at 617-19.

IV. **PLAINTIFF'S ADDITIONAL FACTUAL ALLEGATIONS SHOULD BE DISREGARDED BY THE COURT.**

Plaintiff improperly added new facts regarding her disability in her Response to Defendants' motion to dismiss. If Plaintiff would like to add facts to her Complaint, she should seek leave to amend her Complaint, not add them to her responsive brief. *See Guaranty Residential Lending, Inc. v. International Mortgage Center, Inc.*, 305 F. Supp. 2d 846, 852 (N.D. Ill. 2004). Therefore, the Court should disregard Plaintiff's additional factual allegations related to the operation of her major bodily functions.

V. **PLAINTIFF'S MIXED-MOTIVE REHABILITATION ACT CLAIM FAILS AS A MATTER OF LAW.**

Plaintiff does not allege that she suffered an adverse action under the Rehabilitation Act solely because of her disability. "The Rehabilitation Act protects [ ] employees from discrimination 'solely by reason of' disability, [ ] if an employer fires an employee for any

7

reason other than she is disabled [. . .] there has been no violation[.]" *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013).

Here, Plaintiff includes a separate count beginning on page 23 of her Complaint claiming that she is entitled to relief under Section 504 of the Rehabilitation Act. (Am. Compl. ¶¶ 131-157.) Within that Count, she specifically lists facts that support her claim for relief, including that Defendant Follenweider made hostile, derogatory and negative comments about her age, race/national origin, and disability. (Am. Compl. ¶ 141.) Also within that Count, Plaintiff restates and realleges paragraphs 1-131 of her Complaint, where she alleges that she was discriminated against for a number of reasons, including her race, age and national origin. (*See generally* Am. Compl. ¶¶ 1-131.)

Plaintiff argues in her Response that the specific facts that she relies on in support of her Rehabilitation Act claim do not "establish mixed motives contravening the Rehab Act." (Response, p. 8.) And in support of her argument she cites *Xechem v. Bristol-Meyers Squibb Co.*, 372 F.3d 899, 90 (7th Cir. 2004). However, *Xechem* is easily distinguishable from the case at hand. The Court in *Xechem* was focused on affirmative defenses, not a defect in plaintiff's claim. *Xechem*, 372 F.3d at 901 (explaining that the lower court's decision that was reversed "found, not a defect in the claim, but the presence of affirmative defenses."). Here Defendants allege a defect in Plaintiff's claim— the facts specifically used to support her Rehabilitation Act claim could not support a finding that she was solely discriminated against based on her disability. (*See* Am. Compl. ¶ 141.) As mixed-motive claims are not permitted under the Rehabilitation Act, her Rehabilitation Act claim fails as a matter of law. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019).

VI. **PLAINTIFF FAILS TO PLEAD A *MONELL* CLAIM.**

Under *Monell*, Plaintiff is required to put forth sufficient factual content that allows a court to plausibly infer that Defendants Shannon and Follenweider, in their official capacities, or Cook County had a widespread, unofficial policy, practice or custom that deprived Plaintiff of her constitutional rights and that policy or custom was "the moving force" behind the constitutional violation. *Porter v. Bd. of Educ. of Chi.*, 2018 U.S. Dist. LEXIS 69359 at *23-24 (N.D. Ill. April 25, 2018). A single past act is not sufficient to state a plausible claim of a widespread practice. *See Alcorn v. City of Chicago*, 2018 U.S. Dist. LEXIS 126034, *53 (N.D. Ill. July 27, 2018). Indeed, a plaintiff "must allege multiple such incidents so that the Court can draw the reasonable inference that the alleged practice was so 'permanent and well settled' as to constitute custom with the force of law." *Id*

Here, Plaintiff alleges that "Defendants' disciplined, dismissed and barred employees from future employment knowing of the discriminatory and retaliatory motives of its administrators." (Response, p. 10.) And she argues Defendants followed or acquiesced to that policy when they "fail[ed]to investigate her repeated complaints of discrimination, [held] unlawful hearings violating due process, [allowed her] pretextual suspension and termination, and ban[ned] from future employment." (Response, p. 9.)

However, the timeline presented by Plaintiff shows that she did not allege any specific discriminatory conduct until June 26, 2019 – which is after her suspension date was set and after the alleged unlawful hearing. (Am. Compl. ¶¶ 33, 35, 38.) Thus, Plaintiff's June 27, 2019 suspension which was scheduled on June 20, 2019 and her alleged unlawful June 13, 2019 hearing are not incidents that can be relied upon to establish *Monell* liability.

And even if Plaintiff was permitted to rely on her June 13, 2019 hearing and June 27, 2019 suspension, Plaintiff's claim still fails under *Porter*. (Response, p. 9.) The court in *Porter*,

9

stated that "[t]he gravamen of a *Monell* claim is not individual misconduct by certain employees, but a widespread practice that permeates a critical mass of an institutional body." *Porter*, 2018 U.S. Dist. LEXIS 69359 at *26 (quoting *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015)) (internal quotations omitted). Here, Plaintiff is one person who waited until after she had been disciplined to send a memorandum to Defendants "detailing her allegations of discriminatory and retaliatory mistreatment." (*See* Am. Compl. ¶ 38.) Further, Plaintiff alleges that one person, Defendant Follenweider, discriminated against her based on her race, age, national origin and disability. It is unreasonable to conclude, based on these facts, that a critical mass of the institutional body, the County, had a widespread practice of ignoring allegations of discrimination or failing to properly supervise management employees. *See Porter,* 2018 U.S. Dist. LEXIS 69359 at *26.

Furthermore, in contrast to *Fields v. City of Chicago,* where exculpatory evidence was being withheld in criminal cases, here Plaintiff is an employee who after being disciplined accused her boss of discriminatory conduct. *See* 981 F.3d 534, 563 (7th Cir. 2020). A plaintiff alleging discrimination after being disciplined does not rise to the level of a circumstance where "the need for governmental action is so obvious and the inadequacy so likely to result in constitutional violations" that an employer's failure to act constitutes deliberate indifference. (*See* Response, p. 11 (citing *Fields v. City of Chicago*, 2020 U.S. App. LEXIS 36615, at **61-62 (7th Cir. 2020).)

Plaintiff also fails to allege that Defendants Follenweider and Shannon had final policymaking authority. As the court in *Brandt v. Bd. of Educ.* explained,

> The fact that a particular official – even a policymaking official – has discretion in the exercise of particular function does not, without more, give rise to municipal liability based on an exercise of that discretion. Instead, the public officer must be

10

> responsible for establishing final government policy respecting such activity before the municipality can be held liable.

420 F. Supp. 2d 921, 937 (N.D. Ill. 2006). In *Brandt*, the Court held that based on Board of Education's Rules, school principals did not have final policymaking authority with regard to school disciplinary matters; they merely administered the rules. *Id*. Here, as in *Brandt*, neither Dr. Shannon, nor Ms. Follenweider have final policymaking authority; it is the Cook County Health and Hospitals System Board of Directors that is endowed with such final policymaking authority. *See* Cook County Code of Ordinances, § 38-80(f).

**VII. THE TIA BARS PLAINTIFF'S TORTIOUS INTERFERENCE AND IIED CLAIMS AGAINST DEFENDANT FOLLENWEIDER, IN HER INDIVIDUAL CAPACITY.**

Plaintiff argues that Defendant Follenweider's alleged actions constitute willful and wanton conduct and, therefore, she is not shielded from individual liability under § 2-202 of the TIA. (Response, p. 13.) Plaintiff also argues that the TIA does not bar Plaintiff's § 1983 claim. However, Defendants, in their motion to dismiss, neither argue that § 2-202 applies, nor do they argue that the TIA immunizes them Plaintiff's § 1983 claims. (*See* Motion to Dismiss, pp. 12-13.)

Plaintiff, in her response, goes on to cite two cases in support of her argument that the TIA does not act as a bar to Defendants' claims; but, defendants in those cases sought immunity under §§ 2-204, 2-210, 2-202 and 2-209 of the TIA. (Response, p. 13.) Here, Defendants argue that § 2-201 shields Defendant Follenweider, in her individual capacity, from such liability. (Motion to Dismiss, pp. 12-13.) And it is not Plaintiff, but Defendants, who get to determine which sections of the TIA they may raise as a shield from tort liability. *See Mitter v. County of DuPage*, 2017 U.S. Dist. LEXIS 10114, at *23 (N.D. Ill. Jan. 24, 2017).

Plaintiff also relies on *Breuder v. Board of Trustees of Community College District No. 501*, 238 F. Supp. 3d 1054 (N.D. Ill. 2017) to argue that Defendants discipline of Plaintiff was

11

outside of the scope of her employment. The court in *Breuder* held that under § 2-201 that the "Individual Defendants, acting as Board members, are 'absolutely immune from liability for defamation if the statements were made while acting within the scope of [their] official duties.'" 238 F. Supp. 3d at 1066 (internal citations omitted). Whether members' individual statements to the press were outside of the scope of their job duties, however, was something that the court decided to leave for another day. *Id*. at 1066.

Here, Plaintiff does not claim that Defendant complained to an outside third-party. (*See* Response, pp. 14-15.) She claims that Defendant Follenweider unfairly used the County's internal disciplinary system to discipline Plaintiff. (*See generally* Am. Compl.) Such actions, similar to the comments of board members during a board meeting in *Breuder*, fall squarely within the scope Defendant Follenweider's official duties and, therefore, immunity should attach. *Id*. at 1066.[1]

Plaintiff also cites *Valentino v. Village of South Chicago Heights* to argue that Follenweider's discipline of Plaintiff was not a policy decision under §2-201 of the TIA. (Response, p. 15.) But *Valentino* is easily distinguishable from the case at hand. Valentino's firing did not involve a policy decision because it did not involve the balancing of competing interests. *Id.* at 678-80. The reason the Village proffered as its reason for firing Valentino was because she copied sign-in sheets and/or "because she spoke out against the Village's practice of ghost payrolling, or some combination thereof." *Id*. at 679. As the Village offered "no evidence that it had a policy against copying the sign-in sheets" and because speaking out against

---

[1] Plaintiff's further reliance on *Bagent v. Blessing Care Corp.* and *Mittelman v. Witous* to suggest that Plaintiff acted outside the scope of her duties is puzzling as neither of those cases involve the TIA. *See generally Bagent*, 224 Ill. 2d 154 (2007); *Mittelman*, 135 Ill. 2d 220 (1989).

12

corruption was not contrary to public policy, the court was unable to identify any competing policy interests associated with Valentino's termination. *Id*.

Here, Plaintiff identified some of the competing policy interests involved in this case. *See* Am. Compl. ¶ 32 (providing that Plaintiff was disciplined for violating County's confidentiality policy); *see also* Am. Compl. ¶ 40 (explaining that Plaintiff was terminated for violation of CCHHS' Personnel Rules.). Hence, unlike *Valentino*, Defendant Follenweider's decision to discipline Plaintiff was a discretionary policy decision under §2-201 of the TIA. *See Graham v. Board of Education*, 2019 U.S. Dist. LEXIS 7579, at *14 (N.D. Ill. Jan. 16, 2019) ("municipal decisions regarding the hiring, firing, discipline, and supervision of employees are discretionary policy decisions" under section 2-201 of the TIA.). As Plaintiff's tortious interference and intentional infliction of emotional distress claims (counts 9-11) against Defendant Follenweider, in her individual capacity, are based on Follenweider's discretionary policy decision to discipline Plaintiff, such claims should be dismissed as barred under § 2-201 of the TIA.

## VIII. DISCRETIONARY AUTHORITY UNDER THE TIA AND FINAL POLICY MAKING AUTHORITY AND WIDESPREAD PRACTICE UNDER *MONELL* ARE NOT THE SAME.

Plaintiff's final argument, which is unsupported by case law, is that "Defendants claims of discretionary authority [under the TIA] contradict their earlier defenses against [*Monell* liability]." (Response, p. 15.) However, the test for discretionary authority under the TIA and the test for establishing a custom or practice or final policymaking authority under second and third prongs of *Monell* are not the same. *See Brandt*, 420 F. Supp. 2d at 937 (discussing final policymaking authority under § 1983); *Porter*, 2018 U.S. Dist. LEXIS 69359 at *26 (distinguishing between an individual's policy vs. widespread practice under *Monell*.); *see also Allgood v. City of Chicago,* 2006 U.S. Dist. LEXIS 66514, at *14 (N.D. Ill. Sep. 18, 2006)

(contrasting discretionary acts under the TIA with ministerial acts. "Ministerial acts are those that a person performs on a given state of facts, in a prescribed manner, in obedience to the legal authority, and without reference to the official's discretion as to the propriety of the act."). Therefore, Plaintiff's argument that Defendants' claims are contradictory fails.

## CONCLUSION

For the above reasons and those in Defendants' motion to dismiss, Defendants respectfully request that this Honorable Court dismiss all counts of Plaintiff's Complaint with prejudice, except for her FMLA retaliation claim.

Date: February 23, 2021

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By: /s/ Emily Stewart
Emily Stewart
Assistant State's Attorney – Civil Actions Bureau
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-3014
Emily.Stewart2@cookcountyil.gov