**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARILYN METHAVICHIT,      )
     )
     Plaintiff,      )      No. 1:20-CV-02841
     )
     v.      )
     )      Judge Edmond E. Chang
LINDA FOLLENWEIDER, JOHN JAY      )
SHANNON, and COOK COUNTY,      )
     )
     Defendants.      )

**MEMORANDUM OPINION AND ORDER**

Marilyn Methavichit, a nursing administrator formerly employed by the Cook County Health and Hospitals System, is suing the County (and others) for employment discrimination and related claims. Methavichit alleges that she suffered discrimination based on her race, national origin, age, and disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*[1] She also claims that the Defendants violated her constitutional rights in violation of 42 U.S.C. § 1983, retaliated against her for exercising her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, and committed several state law torts. R. 26, Am.

---

[1]This Court has jurisdiction over Methavichit's federal-question claims under 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367.

Compl.[2] The Defendants, Cook County, Linda Follenweider, and John Jay Shannon have moved to dismiss all claims except the FMLA retaliation claim (the Court will at times refer to the Defendants jointly as Cook County, for simplicity's sake). R. 27, Mot. to Dismiss. For the reasons discussed in this Opinion, the motion is granted in part and denied in part.

## I. Background

As explained later in this Opinion, the Defendants' motion is partially a motion to dismiss under Civil Rule 12(b)(6), and partially a motion for judgment on the pleadings under Rule 12(c). Either way, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Methavichit's favor. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

Marilyn Methavichit is a now-68-year-old Asian woman of Filipino origin, who suffers from Type II diabetes and related conditions, including, at relevant times, renal failure. Am. Compl. ¶¶ 10, 109, 136. She began working for Cook County Health and Hospitals System (Cook County Health for short)in late November 2016. *Id.* ¶ 11. Cook County Health receives federal funding. *Id.* ¶ 132. At the time of Methavichit's discharge nearly three years later, she was an Administrative Nursing Supervisor, Housing Administrator at Cermak Health Services of Cook County, which provides health care to detainees at the Cook County Jail. *Id.* ¶¶ 11, 47. As the Housing Administrator, Methavichit was expected to serve as a leader to hospital staff during

---

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number if applicable.

evening, night, weekend, and holiday shifts when the Chief Nursing Officer was absent, which included "autonomously making operational decisions, resolving discrepancies, and responding to hospital-wide emergences." *Id.* ¶ 12. In this role, Methavichit reported to Defendant Linda Follenweider, a Nurse Practitioner and the Chief Operating Officer for Correctional Health at Cook County Health. *Id.* ¶ 14. Follenweider is white, younger than Methavichit, and Methavichit believes her to be of U.S. national origin. *Id.* ¶ 15. Follenweider became interim Director of Nursing at Cermak in April 2018. *Id.* ¶ 17. (It is not clear if she held this position concurrent with or separately from her Chief Operating Officer position.)

Methavichit started having problems with Follenweider in May 2018. Am. Compl. ¶ 18. That month, Follenweider called Methavichit into her office, where she berated her for performing poorly, and told her she did not deserve or belong at her job. *Id.* In accusing Methavichit of poor performance—an accusation that Methavichit was hearing for the first time—Follenweider referred to actions that fell within Methavichit's job responsibilities. *Id.* A few months later, in September and October, Methavichit had to go to the hospital and receive dialysis to manage her diabetes and related kidney disease. *Id.* ¶ 19. While she was in the hospital, Follenweider inflicted "harassing telephone calls and text messages" on her. *Id.* ¶ 20. Then in December (still in 2018), Methavichit returned to the hospital for surgery and more dialysis. *Id.* ¶ 21. She applied for and received FMLA leave for this period. *Id.* ¶ 22. Again, during her hospitalization, Methavichit received unwanted phone calls and text messages from Follenweider. *Id.* ¶ 23.

3

Methavichit returned to work in December 2018, and soon had to contend with Follenweider's unsuccessful attempt to discipline her for taking sick leave. Am. Compl. ¶ 24. Then, later in December, Methavichit asked to "use her holiday off to get testing needed for kidney transplant." *Id.* ¶ 25.[3] Follenweider denied the request, which prevented Methavichit from being put on a kidney transplant priority list. *Id.* ¶ 25. In January 2019, the two had another run-in, in which Follenweider told Methavichit that she did not deserve the $0.75 per hour raise she was automatically due to receive. *Id.* ¶ 26. Later that same month, Follenweider again told Methavichit that she did not deserve her job, "and made hostile, derogatory and negative insults targeting her age, race, and disability." *Id.* ¶ 27.

In February 2019, Methavichit was called to Northwestern Hospital to receive a kidney transplant. Am. Compl. ¶ 28. She received the call at 7:30 a.m. and was told to get to the hospital by 9 a.m. *Id.* She followed nursing department procedure by immediately notifying the department to "place her on sick call," which angered Follenweider. *Id.* Methavichit took FMLA leave and a leave of absence while she received treatment for her kidney transplant. *Id.* ¶ 29. In mid-May 2019, she returned to work, where her co-workers warned her that Follenweider disliked her and "wanted to get rid of her." *Id.* ¶ 30.

On June 4, 2019, an incident took place and Follenweider used it, according to Methavichit, as a pretext to open disciplinary proceedings against Methavichit. Am.

---

[3]This puzzling assertion will be discussed further in the Analysis.

Compl. ¶ 32. Methavichit had allowed a clerk to enter an office to get a key to open the cardiology clinic, and then supervised the clerk in helping to deal with a paper jam. *Id.* The clerk had no access to confidential information, but Follenweider accused Methavichit of insubordination, and said she had compromised confidentiality by letting the clerk into the office. *Id.* (How an alleged violation of confidentiality policies morphed into an insubordination charge is not explained in the Complaint.) Eight days later, Methavichit was told that there would be a hearing the next day, June 13, about the June 4 incident. *Id.* ¶ 33. She asked for more time so that she could find a lawyer and prepare a defense, but her request was denied. *Id.* The hearing went forward on June 13, and included an interview of the clerk, whom Methavichit was not permitted to confront or cross-examine. *Id.* Methavichit was not permitted to call witnesses. *Id.* Four days later, on June 17, Methavichit complained of harassment and discrimination to Nick Krasucki, the Equal Employment Opportunity director for Cook County Health. *Id.* ¶ 36. At some point in June, Follenweider "expressed her dislike of personnel taking FMLA leave" in a management meeting. *Id.* ¶ 34.

On June 20, one week after the hearing and three days after she first complained of harassment and discrimination, Methavichit was given notice of a one-day suspension that she would serve on June 27 for the June 4 incident. Am. Compl. ¶ 35. On June 25, Methavichit lodged another complaint, this time through counsel. *Id.* ¶ 37. She complained to Krasucki, and Defendant Jay Shannon, Cook County Health's CEO, as well as Timothy Hopa, Cook County Health's Counsel, that she had been subjected to harassment, bullying, and intentional infliction of emotional

5

distress, all due to her national origin, disability, and age, and that she had been retaliated against for using FMLA leave. *Id.* Krasucki asked her to provide more details, and the next day, June 26, she submitted a memorandum detailing her allegations. *Id.* ¶¶ 37–38. The Defendants did not respond to her allegations or improve her working conditions. *Id.* ¶ 39. Instead, when she returned to work on June 28, after serving her one-day suspension, Methavichit received a formal Notice of Pre-Disciplinary Hearing, which was dated June 27. *Id.* ¶ 40. The Notice cited violations of personnel rules, but Methavichit alleges that the purported violations were "false and pretextual accusations." *Id.*

The disciplinary proceedings were so distressing to Methavichit that a few days after her suspension, on or around July 1, she had to be taken to the hospital for emergency treatment to prevent her body from rejecting her kidney. Am. Compl. ¶ 41. Meanwhile, her counsel responded to the allegations in the June 27 Notice, and told the Defendants that Methavichit was hospitalized. *Id.* ¶ 42. On July 5, Methavichit filed a Charge of Discrimination with the EEOC. R. 32-1 at 1, Pl.'s Exh. A, EEOC Charge. On July 10, Methavichit returned to work, where she immediately faced a hearing on the June 27 charges. Am. Compl. ¶¶ 43–44. Two months later, on September 11, the Defendants "issued a Disciplinary Action Form, for dismissal of Dr. Methavichit, on the false and pretextual grounds of the June 27/28 charges." *Id.* ¶ 46. On September 19, Methavichit received notice of her dismissal. *Id.* ¶ 47. A month later, she received notice of her ineligibility for rehire anywhere in the Cook County Health system. *Id.* ¶ 48. Methavichit received her right-to-sue letter from the EEOC

in February 2020 and filed this lawsuit in May 2020. R. 32-1 at 4–5, Pl.'s Exh. B, Right to Sue Letter; R. 1, Original Compl.

## II. Legal Standard

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## B. Rule 12(c)

The County argues that Methavichit failed to exhaust administrative remedies on certain claims, and styles that part of the dismissal motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), just like its other arguments based on alleged defects in the pleadings. But a failure to exhaust is an affirmative defense and thus a Rule 12(b)(6) motion—which tests the adequacy of the allegations to state a valid claim—is inapt, because plaintiffs need not plead around affirmative defenses in a complaint. *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). Instead, the proper vehicle to assert lack of exhaustion (if it is to be considered at the pleading stage) is a Rule 12(c) motion for judgment on the pleadings. If discovery is not needed to resolve the exhaustion defense, and "if the allegations of the complaint [viewed] in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim," *id.*, then the Court may consider the motion at the pleading stage. Neither Methavichit nor Cook County disputes the propriety of addressing the exhaustion defense at this stage. Methavichit asserted in her Complaint that she filed an EEOC Charge "alleging discrimination based on age, race, disability, and retaliation," the same claims she brings in this lawsuit. Am. Compl. ¶ 54. She also attached the EEOC Charge and Right to Sue Letter as exhibits to her response brief. R. 32-1. She has not suggested in the Complaint or brief that

8

any facts are missing from the record that would affect the exhaustion defense. So the Court can decide the exhaustion defense because "the allegations of [Methavi-chit's] complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Put another way, "when all relevant facts are presented, the court may properly dismiss a case before discovery—typically through a Rule 12(c) Motion for Judgment on the Pleadings—on the basis of an affirmative defense." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up).

Generally speaking, a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). In deciding a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Id.* Judgment on the pleadings is proper if it appears beyond doubt that the non-moving party cannot prove any set of facts sufficient to support the claim for relief. *Id.* In deciding a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

### III. Analysis

Before addressing the Defendants' arguments, it is necessary to pause and survey the claims at issue. The First Amended Complaint lists 14 separate counts, although they are not numbered one through 14. Also, two of the 14 counts are carbon

9

copies of one another. The defense's attempt to bring order to the pleading further complicated things by conflating claims that should have remained separate, resulting in the defense's assertion that there are 11 separate claims. Mot. to Dismiss at 2. For clarity's sake, the Court will assign each count its own number (even the duplicates) and cite to its paragraph numbers, while also specifying the nature of the claim. This Opinion will thus not always refer to counts by the same numbers that the parties used.

## A. Exhaustion

Cook County argues that Methavichit's claims of discrimination based on race, national origin, age, and discrimination (under the ADA),[5] as well as retaliation, must be dismissed insofar as they depend on her termination from her position with Cook County Health, because she did not present them in her EEOC Charge, which she filed *before* she was terminated. R. 36, Defs.' Reply at 4–5; EEOC Charge. Therefore, the defense argues, Methavichit has failed to exhaust those claims. *Id.* Methavichit did not attach her EEOC Charge to her Amended Complaint, so the Defendants' opening brief simply "prudentially assert[ed] that Plaintiff has failed to exhaust her administrative remedies" based on the theory that she might not have timely filed an EEOC Charge or included all the claims now before this Court. Mot. to Dismiss at 3–4. Methavichit responded by attaching her EEOC Charge and Right to Sue Letter to

---

[5]For some reason, the defense does not appear to target Methavichit's claim under the Rehabilitation Act. This may have been an error based on the confusing proliferation of claims in the First Amended Complaint and the defendants' renumbering of them. If so, however, it does not matter, because the Court rejects the exhaustion defense at this stage.

her response brief, R. 32-1, and asking the Court to consider those documents and reject the exhaustion defense. Pl's. Resp. at 5. Based on the current record, the Court cannot conclusively determine that Methavichit failed to exhaust her administrative remedies.

Before presenting a particular claim in an employment discrimination lawsuit, the plaintiff must present it to the EEOC (or the parallel state antidiscrimination agency). 42 U.S.C. § 2000e-5(f); *see also Cheek v. W. and S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994); *Cervantes v. Ardagh Group*, 914 F.3d 560, 564 (7th Cir. 2019). The purpose of this requirement is to put the employer on notice of what accusations it faces, and also to give the employer and the administrative agency the chance to resolve the employee's grievances before the employee turns to litigation. *Cheek*, 31 F.3d at 500. Because most employees who file discrimination charges are not attorneys, however, the Seventh Circuit instructs that allegations in EEOC Charges should be viewed expansively when deciding whether a particular claim is within the scope of the Charge. *Id.* "A Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* (cleaned up). Instead, a claim should be considered exhausted if it is "like or reasonably related to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges." *Cervantes*, 914 F.3d at 565 (cleaned up). To be considered "reasonably related" to the original charge, "the claims should involve the same conduct and implicate the same individuals." *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008).

11

The question is whether Methavichit can bring claims based on alleged discrimination that took place *after* she filed her EEOC Charge. She filed her EEOC Charge on July 5, 2019, based on alleged mistreatment that she had experienced before that date, but was not fired from her job until September 19, 2019. EEOC Charge; Am. Compl. ¶ 47. She did not file an additional EEOC Charge. Based on the facts in this case, the Court concludes that this was not a fatal error—Methavichit may well be able to show that she exhausted her remedies even on the claims related to events that took place after she filed her Charge.

The key point is that Methavichit's EEOC Charge includes a lengthy narrative in which she describes the harassment by Follenweider while she was receiving medical care, Follenweider's insults, and her own complaints to Krasucki about harassment and discrimination. EEOC Charge. It also refers to a "Notice of Pre-disciplinary Hearing" she received on June 28, 2019, "based on false accusations of violations of CCHHS Personnel rules," which her Complaint alleges ultimately formed the basis for her termination. EEOC Charge; Am. Compl. ¶¶ 40, 43–47. It is important, too, that the EEOC issued Methavichit her Right to Sue letter on February 12, 2020, several months *after* her termination. Right to Sue Letter. This means that Methavichit was fired while the EEOC had jurisdiction over her charge. If the Commission had investigated the allegations in her Charge, it would doubtless have learned that she was ultimately fired based on the disciplinary hearing that she alleged—in the EEOC Charge—was pretextual.

12

Seventh Circuit precedent on when a claim is "reasonably related" to the allegations in an EEOC charge supports rejecting the exhaustion defense to Methavichit's discrimination claims. (There is a separate basis for rejecting the defense to her retaliation claims, which will be addressed next.) For one thing, the Seventh Circuit has consistently held that claims based on different *kinds* of discrimination than those asserted in the EEOC Charge have *not* been exhausted—but this is not that type of case. *See Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726–27 (7th Cir. 2003) (plaintiff whose EEOC charge listed only retaliation could not later file a case based on sex discrimination and sexual harassment); *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) (sexual harassment claim not the same as sex discrimination charge); *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (EEOC charge based on disparate treatment did not exhaust plaintiff's remedies on a failure to accommodate claim because "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA" (cleaned up)). The appellate court has explained that a plaintiff cannot advance a different type of legal theory than the types that she brought to the EEOC when "the two types of claims are analyzed differently under the law." *Green*, 197 F.3d at 898. In other words, the EEOC would conduct its investigation differently if it knew that the employee was claiming sexual harassment rather than, say, disparate treatment.

But this is not a case where the plaintiff brings claims on an entirely new theory at trial. On her EEOC Charge, Methavichit checked the boxes for discrimination based on race, national origin, disability, age, hostile work environment, and

13

retaliation, and she provided a narrative in support of those claims. EEOC Charge. Her Complaint now brings claims on all of those theories—the only difference is that it includes events that took place after the Charge was filed. But those events, on her alleged facts, are "reasonably related" to the events alleged in her EEOC Charge. Her Charge included allegations that she was wrongfully accused of violating Cook County Health policies, and was being targeted for discipline—that turned out to be the very discipline that culminated in her termination. EEOC Charge; Am. Compl. ¶¶ 46–47. The relationship is clear.

Two cases with facts similar to but distinguishable from Methavichit's further illuminate her case. First, in *Conner v. Illinois Dept. of Natural Resources*, the plaintiff filed an EEOC Charge on November 1, 2002, and was passed over for promotion in December. 413 F.3d 675, 680 (7th Cir. 2005). The Seventh Circuit held that Conner had not exhausted her claim based on non-promotion because: "There was no way for the EEOC to undertake preliminary investigation as contemplated by Title VII's statutory design." *Id.* But crucially, the EEOC had already issued its right-to-sue letter almost immediately after receiving the Charge, on November 6, 2002. *Id.* at 678. By the time Conner was fired, her charge was no longer within the jurisdiction of the EEOC. By contrast, Methavichit's charge *was* still open with the EEOC when she was terminated, based on the very disciplinary action that she had claimed was discriminatory. The reasoning of *Conner* thus supports a finding that Methavichit did exhaust her remedies.

14

Second, in *Moore v. Vital Products, Inc.*, the plaintiff filed an EEOC Charge alleging race and sex discrimination in the form of a hostile work environment and retaliation, but not alleging wrongful discharge, because he did not realize he had been fired. 641 F.3d 253, 256–58 (7th Cir. 2011). The Seventh Circuit agreed with the district court that Moore could not bring a discriminatory discharge claim because he had not exhausted it in his charge, and "Moore's discriminatory discharge claims were not like or reasonably related to the allegations in his EEOC charge." *Id.* at 257–58. The court noted that he described harassment by coworkers and retaliation by his supervisor in the type of work he was given. *Id.* He did not complain that he had been wrongfully disciplined or accused of violating policies, as Methavichit does. Meanwhile, Moore himself did not really argue that the discharge was related to the claims in his EEOC Charge, instead presenting a confusion-based argument "that he could not have included discharge allegations because he did not know he had been discharged." *Id.* at 257. The Seventh Circuit noted the lack of any precedent for creating an exception to the exhaustion requirement for a plaintiff's confusion. *Id. Moore* shows the importance of examining the facts underlying both the charge and the complaint. In this case, that examination leads to the conclusion that Methavichit has exhausted her claims. It is also worth noting that *Moore* was decided on summary judgment, not at the dismissal stage.[6]

---

[6]In its reply brief, Cook County cites *Lucas v. Chicago Transit Authority* to further support its exhaustion argument. 367 F.3d 714 (7th Cir. 2004). But that case addressed the continuing violation doctrine and the relatedness of claims in the context of when a claim is time-barred because it concerns events that happened too long *before* the filing of the EEOC

The exhaustion defense also will not work against Methavichit's retaliation claims, based on a different line of precedent. The Seventh Circuit has repeatedly affirmed that a plaintiff need not file a separate EEOC charge to allege retaliation for filing a previous EEOC charge. *See Ford v. Marion County Sheriff's Office*, 942 F.3d 839, 857 n.11 (7th Cir. 2019); *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 482–83 (7th Cir. 1996). The court explained that this rule exists "for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc. ...." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013). So, to the extent that Methavichit now claims that she was fired from her job and barred from being rehired in retaliation for filing her July 5 EEOC Charge, she has exhausted that claim.

The Court rejects Cook County's exhaustion defense for now, although it can be raised again at the summary judgment stage if discovery somehow reveals a disconnect between the EEOC Charge and the claims in the lawsuit.

### B. Race, National Origin, and Age Claims

### 1. Discrimination and Hostile Work Environment

Methavichit claims that Cook County Health fired her based on her age, race, and national origin in violation of the Age Discrimination in Employment Act (ADEA) and Title VII. Am. Compl. Counts 1 (¶¶ 55–67), 2 (¶¶ 68–80) 3 (¶¶ 81–106), 6

---

charge. *Id.* at 723–24. That is a different inquiry than the one now before the Court, about whether an EEOC Charge can be said to have exhausted claims related to events that came *after* the Charge.

(¶¶ 158–75), 8 (¶¶ 201–18), and 9 (¶¶ 219–36). She is Asian and Filipina and was 66 years old when she was fired in September 2019. Am. Compl. ¶¶ 10, 47. Generally speaking, the same overall analysis applies to claims under Title VII and the ADEA. *See David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 225 (7th Cir. 2017); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). A plaintiff seeking to recover for disparate treatment under these statutes must plead (and eventually show) that their protected characteristic caused the challenged adverse employment action. *Carson v. Lake County., Indiana*, 865 F. 3d 526, 532 (7th Cir. 2017).

The defense does not challenge Methavichit's direct discrimination claims—only her hostile work environment claims. Mot. to Dismiss at 4. In a hostile-environment case under Title VII and the ADEA, the employee must allege that: "(1) [the employee] was subject to unwelcome harassment; (2) the harassment was based on … national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). The problem for Methavichit's hostile work environment claims based on age, race, and national origin is that she has not adequately pleaded either a connection to those characteristics, or harassment severe enough to support her claim.

Methavichit leans heavily on the *Huri* case to support her claims, but as the defense points out, her own case is devoid of the facts that supported Huri's claims. Defs'. Reply at 5–6. Huri pleaded several concrete facts that painted a picture of a hostile work environment based on her religion and national origin: her supervisor referred to other employees as "good Christians" (in contrast to Huri, a Muslim), called Huri "evil," ambushed her with a Christian prayer circle, falsely accused her of misconduct, "screamed at her," and otherwise treated her worse than others in the workplace. *Huri,* 804 F.3d at 830. Other supervisors later subjected Huri to uniquely stringent rules including barring her from entering her office early, refusing to let her daughter wait for her in the lobby, and prohibiting her from keeping non-work items in her office—all in contrast to non-Muslim, non-Arab employees. *Id.* This is a litany of concrete allegations tied to Huri's faith and ethnicity. Methavichit, by contrast, makes exactly one allegation directly tied to her protected characteristics, and it is broad and vague: "Later in January, 2019, Defendant Follenweider told Dr. Methavichit that she did not deserve to be in her current position, and made hostile, derogatory and negative insults targeting her age, race, and disability." Am. Compl. ¶ 27. Methavichit alleges that Follenweider was unkind to her before late January 2019, but she describes a series of encounters in which Follenweider was rude and accused her of incompetence, with no hint of racial or age-based animus. *Id.* ¶¶ 17–18, 24, 26, 31. Even if the Court accepts as true the vague paragraph alleging that Follenweider insulted Methavichit based on her protected characteristics, that one insulting conversation is not enough to create a hostile work environment.

18

Methavichit does not even claim that that conversation had any particular effect on her. *Id.* ¶ 27. It is true that the Seventh Circuit has repeatedly affirmed that for hostile work environment purposes, "even one act of harassment will suffice if it is egregious," but this requires a truly egregious act, such as a sexual assault. *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008).

To be sure, at the dismissal stage, a plaintiff need not set forth detailed allegations and most certainly need not offer evidence in support of the allegations. But she must allege *some* facts in support of her claim beyond generalized conclusions. Methavichit has not done so, and the hostile work environment claims of discrimination based on her age, race, and national origin are dismissed.

### 2. Retaliation

Cook County does not challenge Methavichit's retaliation claims under Title VII or the ADEA, except on exhaustion grounds. Mot. to Dismiss at 3. As already discussed, the exhaustion argument fails at this stage, and the retaliation claims survive the motion to dismiss.

### C. Disability Claims

Next up are the disability claims. Methavichit brings one claim of discrimination under the Americans with Disabilities Act, and another under the Rehabilitation Act, Am. Compl. Count 5, ¶¶ 132–57. She appears to have accidentally pleaded the ADA claim twice, as Count 4 (*id.* ¶¶ 107–31) and Count 7 (*id.* ¶¶ 176–200), so Count 7 is stricken as redundant. Methavichit alleges both disparate treatment and a hostile work environment under each statute. Each type of claim will be addressed in

19

turn, but as an initial matter, the Court rejects the defense's argument that Methavichit is not even disabled, which is the threshold requirement for a person seeking disability-discrimination relief under the ADA or Rehabilitation Act.

Contrary to the defense's arguments, Mot. to Dismiss at 7–8, diabetes and kidney failure *can* constitute a disability under both the ADA and the Rehabilitation Act. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). In addition to the obvious examples such as seeing, hearing, walking, breathing, and so on, "a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(A) and (B). As the defense points out, Methavichit did not explicitly allege how her diabetes impaired her life activities (although she did describe periods of hospitalization to treat her kidney failure). *See* Mot. to Dismiss at 8. And there are some conditions that are obscure or ambiguous enough that a plaintiff would need to plead more facts to establish her disability—but diabetes is not one of those conditions, at least not when paired with allegations of active kidney disease and failure. *See, e.g.*, *Cloutier v. GoJet Airlines, LLC*, 311 F. Supp. 3d 928, 936–37 (N.D. Ill. 2018) (holding that diabetes can constitute a "disability" because, under the ADA, disabilities include impairments that substantially limit the operation of major bodily functions, such as the endocrine system). At the pleading stage, Methavichit has sufficiently alleged that she suffers from a qualifying disability.

20

### 1. Disparate Treatment

A plaintiff bringing a disparate-treatment claim (sometimes referred to as an intentional-discrimination claim) under the ADA "must allege that he is disabled within the meaning of the Act, is nevertheless qualified to perform the essential functions of the job either with or without reasonable accommodation, and has suffered an adverse employment action because of his disability." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). As already explained, Methavichit has adequately alleged that she was disabled. The defense does not challenge the sufficiency of any other aspect of her pleading as to her ADA claim for disparate treatment, so that claim, Count 4 of the Amended Complaint, ¶¶ 176–200, survives.

The elements of a discrimination claim under the Rehabilitation Act are largely the same as those under the ADA, with one difference: "the Rehabilitation Act prohibits discrimination only if it is '*solely* by reason of' a person's disability." *Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 484 (7th Cir. 2019) (emphasis added); *see also* 29 U.S.C. § 794(a). The defense here argues that the Rehabilitation Act claim must be dismissed because Methavichit has not adequately pleaded that she was fired *solely* because of her disability. Mot. to Dismiss 8–9. To the defense's way of thinking, because Methavichit claims to have been fired because of not just her disability, but also her age, race, and national origin, she cannot bring a Rehabilitation Act claim. *Id.* There are several problems with this argument. First and foremost, plaintiffs are permitted to plead in the alternative, and on this ground alone, the Rehabilitation Act claim survives Cook County's motion. Even if the defense is correct

21

that disability must literally be the *sole* motive for the termination in order for Methavichit to bring a Rehabilitation Act claim, discovery could reveal that Methavichit's claims based on race, national origin, and age were not motivations for the employment decisions, leaving disability as the one protected characteristic that motivated the defendants' decision.

The defendants' argument is otherwise unpersuasive, too. The Seventh Circuit has tended to analyze ADA and Rehabilitation Act claims in the same breath. *See, e.g., Reed*, 915 F.3d at 484; *Monroe v. Indiana Dept. of Transp.*, 871 F.3d 495, 503–05 (7th Cir. 2017); *Doll v. Brown,* 75 F.3d 1200, 1205 (7th Cir. 1996). Plaintiffs claiming disability discrimination under the ADA must claim (and eventually prove) that their disability was the "but for" cause of the adverse action they experienced. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010); *but see Monroe*, 871 F.3d at 504 (applying but-for standard to ADA claim, but noting that "it is an open question whether the change [to the statute] from 'because of' to 'on the basis of' changes the 'but for' causation standard"). In a but-for analysis, a defendant may have had other motivations for firing the employee, but if the employer *would not have fired her* if not for the disability, the disability is the but-for reason—and arguably the sole reason—the person was fired. *Serwatka*, 591 F.3d at 962. The defense has cited no case that explicitly de-links the Rehabilitation Act from the ADA and explain why the "solely" standard should be viewed as higher than the "but for" standard under the ADA. It is also worth noting that a "mixed-motive" claim, as the defense labels the Rehabilitation Act claim, is *by definition* one in which "an employer is

alleged to have used both discriminatory and legitimate grounds in taking an adverse employment action against an employee." *Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 705 (7th Cir. 2015); *see also Price Waterhouse v. Hopkins,* 490 U.S. 228, 229 (1989). Methavichit does not concede that her former employer had a legitimate reason to fire her; she specifically alleges that the proffered reasons were pretextual. Am. Compl. ¶¶ 32, 40. This leaves the defense to argue that a plaintiff cannot bring a Rehabilitation Act claim if she was *also* discriminated against because of her protected characteristics apart from her disability. So far, the defense has cited no case law to support this unusual argument.

The Defendants are welcome to renew their challenge to Methavichit's Rehabilitation Act claim at the summary judgment stage or at trial (perhaps case law will have addressed the issue by then), but for now the claim, which is Count 5 of the First Amended Complaint, ¶¶ 132–57, survives.

### 2. Hostile Work Environment

Hostile work environment claims can be brought under the Americans with Disability Act just like under Title VII. *Ford v. Marion County Sheriff's Office*, 942 F.3d 839, 851 (7th Cir. 2019). The elements of a hostile work environment claim are the same under the ADA as under Title VII. *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021) (*en banc*). But where Methavichit failed under Title VII, she succeeds under the ADA—and, given the statutes' similarity, under the Rehabilitation Act, too. Remember that to plead a hostile work environment claim, a plaintiff must allege: "(1) unwelcome harassment; (2) based on

23

a protected characteristic; (3) that was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) a basis for employer liability." *Id.* Methavichit has successfully alleged all four elements, though with little room to spare.

The disability-based hostile work environment claim survives because of the harassing calls and texts that Methavichit received from Follenweider while in the hospital. The defense correctly points out that Methavichit's allegations of being insulted based on her disability are extremely vague. Mot. to Dismiss at 5. But the defense does not address the part of the complaint in which Methavichit alleges that while she was in the hospital, on dialysis, Follenweider harassed her with calls and text messages. Am. Compl. ¶¶ 19–20. Similarly, while Methavichit was on FMLA leave, Follenweider sent harassing communications. *Id.* ¶¶ 22–23. Once again, Methavichit provides no detail about the content of these alleged harassing messages, but this time, their existence alone is enough to plead a hostile working environment. At the pleading stage, the Court is accepting all of Methavichit's well-pleaded facts and making reasonable inferences in her favor. A reasonable inference is that it was unnecessary for Follenweider to contact Methavichit *at all* while she was out on leave, receiving necessary medical treatment. An employee who cannot take time away from work to receive life-saving healthcare due to her disability without receiving unwanted texts and calls from her supervisor has pleaded a hostile work environment based on her disability.

24

Methavichit can also draw further support for her hostile work environment claim based on her allegation that Follenweider prevented her from accessing testing that Methavichit needed to get on the list for a kidney transplant. Am. Compl. ¶ 25. The allegation is admittedly confusing as pleaded: "In December, 2018, Dr. Methavichit requested to use her holiday off to get testing needed for kidney transplant. Without explanation Defendant Follenweider rejected her request, preventing her placement on the priority list for kidney transplant." *Id.* Why would Follenweider have any say on what Methavichit did with holiday time she already had off of work? Perhaps supervisors can require work on holidays, and Follenweider was requiring that Methavichit show up for work? Or is the claim that Methavichit was asking for additional time off around the holidays to get testing? Although this particular allegation is not clear, and these questions will need to be resolved during discovery and perhaps at summary judgment, at the pleading stage the Court accepts that Follenweider somehow interfered with Methavichit's ability to move forward in the process of obtaining a kidney transplant. This is a very serious allegation and would certainly support Methavichit's claim that Follenweider harassed her because of her disability, along with the harassing texts and phone calls while Methavichit was in the hospital and on FMLA leave.

Methavichit's hostile work environment claims under the ADA, Am. Compl. Count 4, ¶¶ 107–31, and Rehabilitation Act, *id.* Count 5, ¶¶ 132–57, survive the motion to dismiss.

25

### D. Section 1983

Next, Methavichit brings a claim under 42 U.S.C. § 1983 against the Cook County Defendants, defined as Shannon and Follenweider in their official capacities and Cook County, Illinois. Am. Compl. at 1, and Count 11, ¶¶ 260–66. To begin, the claim against Shannon and Follenweider is dismissed because it is redundant with the claim against Cook County. *Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself.") (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

The claim against Cook County fares no better. It is true that municipalities, like individuals, are suable "persons" under Section 1983, as the Supreme Court held in *Monell v. New York City Department of Social Services. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("We held in Monell ... that municipalities and other local governmental bodies are 'persons' within the meaning of § 1983.") (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To adequately state a *Monell* claim—that is, to allege that a municipality caused a deprivation of the plaintiff's constitutional rights—the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (cleaned up). That requires, practically speaking, three things.

26

First, the plaintiff must allege that he or she has suffered the deprivation of a constitutional right. *See* 42 U.S.C. § 1983. Second, the plaintiff must adequately allege that the municipality's "policy or custom" at issue in fact exists. *Estate of Sims*, 506 F.3d at 514. There are three ways to do this: a plaintiff can allege "an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or ... the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Finally, the plaintiff must allege causation, that is, the plaintiff must connect the policy or custom to the constitutional deprivation by alleging that the former was the "moving force" behind the latter. *Estate of Sims*, 506 F.3d at 514.

Here, Methavichit falls short of alleging the facts necessary to state a *Monell* claim against Cook County. She has not pleaded facts to establish the existence of a municipal policy that caused her constitutional rights to be violated. The only facts—as distinct from generalized conclusions—that she offers in the Amended Complaint are about her own experiences. Her attempt to allege a broader policy or practice of discrimination based on race, national origin, and disability is vague, conclusory, and based on information and belief. Am. Compl. ¶¶ 51–53. Sweeping assertions that other members of protected groups have "suffered discrimination" are not enough to support a *Monell* claim. Who suffered the discrimination? What kind of discrimination? When did this happen? Who inflicted the discrimination? A plaintiff need not have detailed facts at her disposal at the pleading stage, but she must plead *some*

concrete facts. And a plaintiff typically cannot state a *Monell* policy claim without at least alleging that an unconstitutional policy was applied multiple times. *Gable v. City of Chicago,* 296 F.3d 531 (7th Cir. 2002). Methavichit does not mention any specific victim aside from herself that she can connect with the alleged discrimination at Cook County Health. Her argument that she has alleged that Cook County discriminated against her "on more than three occasions" does not hold water. Pl's. Resp. at 9. The "occasions" are just different stages of the same, single, discipline process which forms the basis of her complaint. *Id.*

Methavichit tries to draw an equivalency between this case and *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), but her argument is unpersuasive. Pl's. Resp. at 10–11. The Supreme Court in *Harris* held that municipalities could be held liable under Section 1983 when they had failed to provide training that was obviously necessary to avert constitutional violations, thereby demonstrating their "deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388–90. Liability could lie against the municipality even if the plaintiff had not established a pattern of violations, because the training itself was so clearly inadequate as to lead to violations. *Id.* Methavichit also cites a recent Seventh Circuit case reiterating that a municipality can be held liable based on a policy that is obviously likely to lead to lead to constitutional violations, even in the absence of actual violations prior to those suffered by a plaintiff. *Fields v. City of Chicago*, 981 F.3d 534, 562 (7th Cir. 2020). In that case, the Chicago Police policy at issue was one of poor record-keeping and failure to produce records necessary for a defendant to

28

receive a fair criminal trial. *Id.* at 543, 562. But here Methavichit did not allege a failure to train, as originally contemplated by *Harris*. Methavichit also has not coherently alleged any other policy that could support a claim under the *Harris* standard. She seems to be arguing now that Cook County has a policy of not investigating complaints of discrimination, and of failing to intervene when a supervisor acts inappropriately. Pl's Resp. at 10–12. But Methavichit's own complaint says that Cook County did respond to her complaint of discrimination. Am. Compl. ¶ 37. She was clearly not satisfied with the response, or with the disciplinary process that preceded and continued after her complaints. *Id.* ¶¶ 35–48. But she has not pleaded the kind of facts that support a *Monell* claim under *Harris* and *Fields*.

Nor does Methavichit make any real effort to allege that Follenweider or Shannon was a final policymaker for *Monell* purposes. Follenweider was certainly Methavichit's supervisor, and apparently had some authority over Methavichit's conditions of employment. *Id.* ¶ 14. Shannon was the CEO of Cook County Health, though Follenweider does not allege what kind of authority that position carries. *Id.* ¶ 37. "Not every municipal official with discretion is a final policymaker; authority to make final policy in a given area requires more than mere discretion to act." *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). If an official's decisions are not reviewed by a higher authority within the organization, that official is likely the final policymaker. *Id.* Methavichit does not allege that any county ordinance named either Follenweider or Shannon as final policymakers, or that they in fact created or instituted discriminatory policies, or that either of them, alone, had the final say on

29

decisions related to her employment. She has thus not stated a *Monell* claim on the basis of a decision by a policymaker.

In sum, Methavichit has not put Cook County on notice about the basis of her *Monell* claim, and the claim, which is Count 11 of the Amended Complaint, ¶¶ 260–66, cannot move forward.

### E. State Law Claims

Finally, Methavichit brings three state law tort claims: tortious interference with prospective economic advantage against Follenweider individually, Am. Compl. Count 12, ¶¶ 267–80; tortious interference with contract, also against Follenweider individually, *id.* Count 13, ¶¶ 281–91; and intentional infliction of emotional distress against all the defendants, *id.* Count 14, ¶¶ 292–96. The defense argues that all of these claims should be dismissed because the defendants are protected by the Illinois Tort Immunity Act, and the defense also raises a separate substantive defense to the intentional infliction of emotional distress claim. Mot. to Dismiss at 12–15. Neither argument succeeds.[7]

### 1. Illinois Tort Immunity Act

First, Cook County argues that all three state law claims should be dismissed against all defendants, invoking three sections of the Illinois Tort Immunity Act. 745

---

[7]The defense also argues that Methavichit has partially waived her opposition to their arguments on these claims by failing to address them. Def's. Reply at 2. But Methavichit's response brief clearly attempts to defend her state-law claims, and the Court will not dismiss them because she did not respond as directly as possible to each argument by the defense. Pl's. Resp. at 13–15.

ILCS 10/2-201, 2-106, and 2-107. The Act bars tort claims that are based on discretionary decisions of government employees: "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. The Illinois Supreme Court has interpreted this immunity to its full extent, explaining that "Section 2-201 provides absolute immunity for both negligence and willful and wanton conduct." *Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 160 N.E.3d 895, 905 (Ill. 2019). The Defendants argue that Follenweider and Shannon are the kinds of public employees contemplated by Section 2-201—individuals who make discretionary policy decisions that affect employees like Methavichit—and are therefore immune from the tort claims that challenge their decision to fire her. Mot. to Dismiss at 13. But Section 2-201 does not protect public employees who fire employees in retaliation for exercising their legal rights. *See Smith v. Waukegan Park Dist.* 231 Ill.2d 111, 119 (Ill. 2008) (holding that "under established Illinois law, public entities possess no immunized discretion to discharge employees for exercising their workers' compensation rights."). As the Illinois Supreme Court has explained: "We cannot identify what legitimate competing interests are involved when a public entity decides to violate the clear prohibition of another enactment of the legislature ...." *Id.* at 120. This reasoning applies just as forcefully in a case where the plaintiff alleges she was retaliated against for reporting employment discrimination as it did in

31

*Smith*, which was about an employee who had exercised their workers' compensation rights.

It is important to remember once again that for purposes of this motion, the Court accepts Methavichit's facts as true. Methavichit alleges that Follenweider decided to discriminate against her on unlawful grounds, harassing her and instigating discipline that led to Methavichit's termination. Pl's. Resp. at 14. This is exactly the kind of decision that is *not* protected by the Illinois Tort Immunity Act.[8]

The defense also argues that Cook County is immunized from claims under Sections 2-106 and 2-107 of the Illinois Tort Immunity Act, but those sections do not apply to this case. Mot. to Dismiss at 14. Section 2-106 protects public entities from tort suits based on their employees' oral promises and misrepresentations, while Section 2-107 protects public entities from tort suits based on their employees' slander and libel of plaintiffs. Methavichit does not bring any claims based on oral promises or misrepresentations, or slander or libel. Accordingly, the Illinois Tort Immunity Act does not protect Cook County at the pleading stage.

### 2. Intentional Infliction of Emotional Dismiss

To state a claim for intentional infliction of emotional distress, Methavichit must assert that: "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was

---

[8]In response to Cook County's motion, Methavichit argued that Follenweider was not immune under a separate section of the Tort Immunity Act, 743 ILCS 10/2-202. Pl's. Resp. at 13–15. But the defendants did not invoke this section of the Act, so the argument is inapposite.

at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Cook County argues that Methavichit has not pleaded facts to support her claim, against all the Defendants, that she was subjected to "truly extreme and outrageous" conduct. Mot. to Dismiss at 14–15. In making this argument, Cook County asks the Court to disregard conclusory factual statements and focuses on Follenweider's alleged insulting comments to Methavichit. *Id.*, citing Am. Compl. ¶¶ 18, 16–27. But, as in its attack on the hostile work environment claim based on disability, the defense overlooks Methavichit's allegations that Follenweider harassed her while she was seeking and receiving medical treatment related to her disability. The Complaint pleads more than the type of "personality conflicts and questioning of job performance [that] are unavoidable aspects of employment" and thus not contemplated by intentional infliction of emotional distress claims. *Richards*, 869 F.3d at 567. Just as Methavichit's allegations support a claim of a hostile work environment based on her disability, they support a claim for intentional infliction of emotional distress. A supervisor who sends unnecessary, harassing communications to an employee who is in the hospital and on approved time off for a medical crisis is behaving in an extreme and outrageous way (at least a reasonable jury could so find), and should know that this behavior will cause emotional distress. And Methavichit has explicitly alleged that she suffered emotional and physical distress stemming from Follenweider's actions. Am. Compl. ¶ 64.

Shannon's connection to the incidents is more attenuated, but at this stage the claim can remain alive against him, too. Methavichit alleges that she complained to Shannon about the discriminatory treatment she felt she had endured at Follenweider's hands, including during her illness, on June 25 and 26, 2019. Am. Compl. ¶¶ 37–38. She further alleges that the additional discipline she received after those dates was "based on false and pretextual accusations of violations of CCHHA [sic] Personnel Rules." *Id.* ¶ 40. Accepting, for now, that Methavichit notified Shannon of the abuse she had endured, and Shannon, as CEO, greenlighted further discipline against her that was really grounded in discriminatory motives, she has stated a claim against him for intentional infliction of emotional distress.

Methavichit's state law tort claims, specifically Counts 12, 13, and 14 of her Amended Complaint (¶¶ 267–96), survive in full.

## IV. Conclusion

The Defendants' partial motion to dismiss is granted in part and denied in part. The following claims from the First Amended Complaint are dismissed: Count 1, ¶¶ 55–67, race discrimination under Title VII (hostile work environment); Count 2, ¶¶ 68–70, national origin discrimination under Title VII (hostile work environment); Count 3, ¶¶ 81–106, age discrimination under the ADEA (hostile work environment); Count 7, ¶¶ 176–200, disability discrimination (as redundant with Count 4); Count 11, ¶¶ 260–66, equal protection violations under 42 U.S.C. § 1983. The dismissal is with prejudice given that the complaint has already been amended. But the

remaining claims survive, including Counts 1 through 4 to the extent they raise a hostile work environment claim.

The Defendants' answer to the First Amended Complaint is due on January 12, 2022. The parties shall confer and file a proposed discovery schedule by January 14, 2022. The tracking status hearing of January 7, 2022, is reset to January 21, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the Court will review the discovery status report and set a schedule based on the report.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 21, 2021

35